UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HENRY BROWN,

        Petitioner,

                                  CASE NO. 2:17-CV-13817
    v.                           HON. GEORGE CARAM STEEH
                                    UNITED STATES DISTRICT JUDGE
RANDEE REWERTS,[1]

        Respondent.
_____/

## OPINION AND ORDER DENYING THE PETITION FOR A WRIT OF HABEAS CORPUS AND DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY OR LEAVE TO APPEAL *IN FORMA PAUPERIS*

      Henry Brown, ("petitioner"), confined at the Carson City Correctional

Facility in Carson City, Michigan, seeks the issuance of a writ of habeas

corpus pursuant to 28 U.S.C. § 2254.  In his *pro se* application, petitioner

challenges his conviction for assault with intent to commit murder, M.C.L. §

750.83, felon in possession of a firearm, M.C.L. § 750.224f, and

possession of a firearm during the commission of a felony (felony-firearm),

M.C.L. § 750.227b.  The trial court sentenced petitioner as a habitual

offender under M.C.L. § 769.10, to 356 months to 75 years for the assault

---

[1] The Court amends the caption to reflect the current warden of petitioner's incarceration.

with intent to commit murder conviction, three to seven years and six months for the felon in possession of a firearm conviction, and two years for the felony-firearm conviction. For the reasons stated below, the petition for a writ of habeas corpus is DENIED.

## I. Background

Petitioner testified that he knew the complainant's name to be Theresa Renee Smith and not Shirley Ann Smith. (T. 5/5/2011, p. 11). He testified that he also knew Tony George, and the cab driver, Dennis Weldon. (*Id.*). Petitioner further testified that he had known Weldon for more than one year and would call him when he needed a cab ride. (*Id.*, p. 12).

Dennis Weldon testified that on July 17, 2010, he was employed by the Checker Cab Company when he picked petitioner up at the Travelers Inn. (T. 5/3/2011, p. 144). Weldon testified that he drove petitioner to an address near Maxwell St. where he waited while petitioner went into the house and then came back to the cab. (*Id.*, p. 145).

Tony Brodock George (a/k/a/ Eric) testified that on July 17, 2010, he was in the area of Maxwell St. when he saw petitioner getting into in a yellow cab. (T. 5/4/2011, p. 8). He testified that petitioner told him, "[Y]ou better—she down there dying; you better go save her; you probably could

save that b——; she probably dead, so." (*Id.*, p. 10). George testified that petitioner told him he was talking about Ree Ree and that he knew Ree Ree. (*Id.*, p. 11). George also testified that petitioner had a gun and that he was holding it in his hand, when petitioner told him that he just shot Ree Ree and she probably was dead. (*Id.,* pp. 12-13). George went to her house where he found Ree Ree laying on a mattress in the living room talking to the 911 operator. One of her friends was applying pressure to her. (*Id.*, pp. 13-15). George testified that he could see Ree Ree was bleeding from her chest and leg, and she was in pain and light headed. (*Id.*, p. 17). George asked Smith what happened and she said, "he shot me in the chest." (*Id.*, p. 20). George testified that he did not ask who shot Smith because he knew, having spoken to petitioner moments earlier. (*Id.*). George testified that when the police arrived and asked Smith who did it, she said, "Henry Brown, he shot me in the chest." (*Id.*, p. 21).

Officer Tyrone Gray of the Detroit Police Department testified that during the afternoon of July 17, 2010, he was dispatched to 8320 Maxwell St. on a shooting complaint. (*Id.*, pp. 32-33). When Officer Gray entered the front door he observed a woman suffering from multiple gunshot wounds lying on a mattress with gunshot wounds to her chest and lower

leg.  The woman identified herself as Shirley Ann Smith and was crying, in great pain, and going in and out of consciousness. (*Id.*, pp. 34-36).  Officer Gray testified that the victim said, "I was shot by Henry Brown; please, sir, I don't want to die; Henry shot me." (*Id.*, p. 38).  Gray further testified that Eric George informed him that petitioner was riding in a Checker cab. (*Id.*, p. 43).  Gray testified that he and other officers followed a Checker cab that was on Maxwell St. as it drove onto Van Dyke Road and then turned left on Harper, where a traffic stop was made and petitioner was arrested. (*Id.*, pp. 44-45).  Upon arrest, petitioner told Gray, "F—— that b——; she going to get out by eight o'clock; what the Judge going to do, give her some blow? That b—— ain't testifying. This s—— is a joke." (*Id.*, p. 52).

Sergeant Nathan Duda of the Detroit Police Department testified that on July 17, 2010, he prepared and executed a search warrant for Room No. 118 at the Travelers Inn located at 11560 Harper Ave.  Duda obtained a registration card from the manager on which the defendant gave his address as 8777 Woodlawn St. (*Id.*, pp. 75-77).  Duda further testified that he then obtained a search warrant for that address.  Duda stated that the two women at the residence told him that petitioner lived upstairs. (*Id.*, pp. 80-81).  Duda observed Officer Wilson recover a silver .45 caliber semi-

automatic loaded handgun in that room. (*Id.*, pp. 83-84). During cross-examination, Sgt. Duda testified that there was one live round in the gun. (*Id.*, p. 85).

Officer Douglas Williams of the Detroit Police Department also testified that on July 17, 2010, he participated in the execution of a search warrant at 8777 Woodlawn St. where he recovered a silver .45 caliber automatic handgun in an upstairs bedroom. Williams stated that the gun was loaded with one live round. (*Id.*, pp. 88-89).

Detective Lieutenant Brian Bergeron of the Michigan State Police Crime Lab (MSP) testified that he examined four fired shell casings, two fired bullets, and a firearm. (*Id.*, p 107). He testified that it was his opinion that the four shell casings and the two fired bullets were fired in the firearm that he examined. (*Id.*, p. 127).

Petitioner's conviction was affirmed on appeal. *People v. Brown*, No. 310156, 2013 WL 4487506 (Mich. Ct. App. Aug. 22, 2013); *lv. den.* 495 Mich. 916, 840 N.W.2d 369 (2013).

Petitioner then filed a motion for relief from judgment which was denied. *People v.Brown*, No. 10-008214-01-FC (Wayne County Circuit Court, May 3, 2016). The Michigan appellate courts denied petitioner leave

to appeal. *People v. Brown,* No. 335013 (Mich. Ct. App. Dec. 21, 2016); *lv. den.* 501 Mich. 908, 902 N.W.2d 621 (2017).

Petitioner filed a second motion for relief from judgement based on newly discovered evidence, which was also denied. *People v. Brown*, No. 10-008214-01-FC (Wayne County Circuit Court, Dec. 14, 2016). The Michigan appellate courts denied petitioner leave to appeal. *People v. Brown,* No. 337650 (Mich. Ct. App. July 6, 2017); *lv. den.* 501 Mich. 911, 902 N.W.2d 878 (2017).

Petitioner alleges in his habeas corpus petition that: (1) his sentence is cruel and unusual punishment; (2) the victim's out-of-court statements were inadmissible hearsay; (3) the evidence was insufficient to sustain his convictions; (4) his trial and appellate attorneys were ineffective; and (5) the prosecutor (a) failed to correct perjured testimony and (b) suppressed exculpatory impeachment evidence. The State argues in its answer to the habeas petition that: (1) the state court reasonably applied clearly established federal law when it adjudicated petitioner's sentencing claim; (2) petitioner's evidentiary claim is not cognizable on habeas review, and his claim under the Confrontation Clause is abandoned and meritless; (3) there was sufficient evidence to convict petitioner; (4) petitioner has not

proved the factual predicate for his claim about trial counsel, and petitioner's claim about appellate counsel is procedurally defaulted and meritless; and (5) petitioner's prosecutorial-misconduct claim is procedurally defaulted and meritless.

## II. Standard of Review

28 U.S.C. § 2254(d), as amended by The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), imposes the following standard of review for habeas cases:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410-11. "[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)(citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). In order to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington,* 562 U.S. at 103. A habeas petitioner should be denied relief as long as it is within the "realm of possibility" that fairminded jurists could find the state court decision to be reasonable. *See Woods v. Etherton,* 136 S. Ct. 1149, 1152 (2016).

## III. Discussion

### A.     Claim # 1.  The sentencing claim.

Petitioner alleges that his sentence of 29 years and 8 months to 75 years in prison on the assault with intent to commit murder conviction, for repeatedly shooting a woman, constitutes cruel and unusual punishment, because petitioner was 49 years old when he was sentenced.

A habeas petitioner who seeks to challenge the severity of a prison sentence on Eight Amendment grounds faces a formidable challenge.  He may obtain relief only by demonstrating that a state court decision contravened or misapplied "clearly established" Supreme Court precedent. However, the Supreme Court has acknowledged "that our precedents in this area have not been a model of clarity." *Lockyer v. Andrade,* 538 U.S. 63, 72 (2003).  "Indeed, in determining whether a particular sentence for a term of years can violate the Eighth Amendment, we have not established a clear or consistent path for courts to follow." *Id.*  Thus, the Supreme Court declared that the general applicability of the proportionality standard to term-of-years sentences was clearly established, but confessed a lack of clarity as to the factors lower courts should consider in making that determination. *Id.*  The Supreme Court concluded that "the only relevant

clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.*

In *Lockyer,* the Supreme Court reversed the Ninth Circuit's grant of a writ of habeas corpus on the ground that two twenty-five-year-to-life sentences imposed under California's "three strikes" law, where the triggering felony was the theft of $150 worth of video tapes, violated the Cruel and Unusual Punishment Clause of the Eighth Amendment.  The Supreme Court noted that the "thicket" created by its jurisprudence consisted primarily of its decisions in *Solem v. Helm,* 463 US. 277 (1983), *Harmelin v. Michigan*, 501 U.S. 957 (1991), and *Rummel v. Estelle*, 445 U.S. 263 (1980).  The California state court observed that the proportionality rule set forth in *Solem* was cast into doubt by *Harmelin,* and proceeded to analyze Andrade's sentence under the approach taken in *Rummel,* where the Supreme Court rejected a claim that a life sentence imposed under Texas' recidivist statute was grossly disproportionate to the theft felonies that formed the predicate for the sentence.  The California court concluded that Andrade's sentence was not disproportionate.  The

Supreme Court held that this decision was not contrary to or an objectively unreasonable application of federal law that was clearly established by the Supreme Court. *Lockyer,* 538 U.S. at 72-77.

A plurality of the Supreme Court held that the Eighth Amendment does not require strict proportionality between the crime and sentence. *Harmelin,* 501 U.S. at 965. As the Supreme Court observed in *Lockyer,* it is generally recognized after *Harmelin* that the Cruel and Unusual Punishment Clause of the Eighth Amendment forbids only an extreme disparity between crime and sentence, that is, sentences that are "grossly disproportionate" to the crime. *Id.* at 1001 (Kennedy, J., concurring); *Coleman v. Mitchell,* 268 F.3d 417, 453 (6th Cir. 2001)(citing *Coker v. Georgia,* 433 U.S. 584, 592 (1977)); *United States v. Hopper,* 941 F.2d 419, 422 (6th Cir. 1991)).

"Outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Rummel,* 445 U.S. at 272. Rummel was convicted of obtaining $120.75 by false pretenses, a crime punishable by at least two years, but not more than ten years in prison. He was sentenced as a recidivist to life imprisonment with the possibility of parole. His two prior felonies consisted

of fraudulent use of a credit card to obtain $80 worth of goods and services, a felony punishable by two to ten years in prison; and passing a forged check for $28.36, a crime punishable by two to five years in prison. The Supreme Court held that Rummel's life sentence under the state recidivist statute did not constitute cruel and unusual punishment.  In *Harmelin,* the Supreme Court upheld a life sentence without the possibility of parole for possession of more than 650 grams of cocaine for an offender with no prior felony convictions.

The Supreme Court overturned a life sentence in *Solem* on the ground that it was significantly disproportionate to Helm's crime and therefore prohibited by the Eighth Amendment.  However, Helm had been sentenced to life imprisonment *without* the possibility of parole for uttering a "no account" check for $100, and his prior felonies also were minor, nonviolent crimes.  By contrast, the Supreme Court reaffirmed *Rummel* and found constitutionally sufficient a sentence of twenty-five years to life imposed upon a fifth felony conviction. *Ewing v. California,* 538 U.S. 11, 24-31 (2003).

In the present case, petitioner's sentence fell within the maximum sentence set by state law, and "a sentence within the statutory maximum

set by statute generally does not constitute 'cruel and unusual punishment.'" *United States v. Organek,* 65 F.3d 60, 62 (6th Cir. 1995)(citation omitted)(quoted with approval in *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000).  "As long as the sentence remains within the statutory limits, trial courts have historically been given wide discretion in determining 'the type and extent of punishment for convicted defendants.'" *Austin,* 213 F.3d at 301 (quoting *Williams v. New York,* 337 U.S. 241, 245 (1949)).

In light of "the vagueness of the gross-disproportionality principle and the admonition that the principle is "applicable only in the 'exceedingly rare' and 'extreme' case," this Court concludes that the state courts did not unreasonably apply clearly established law in rejecting petitioner's proportionality claim. *See Smith v. Howerton*, 509 F. App'x 476, 484 (6th Cir. 2012)(internal quotations omitted).

Petitioner's sentence of 29 years, 8 months to 75 years in prison was within the statutory limits of the offense of assault with intent to commit murder.  Petitioner's minimum sentence of twenty-nine years and eight months was also within the sentencing guidelines range of 171 months to

356 months for the assault with intent to commit murder conviction.[2] *Brown,*

2013 WL 4487506, at \*8.  In Michigan, sentences within a correctly scored

guidelines range are presumptively proportionate. *See Hastings v. Yukins,*

194 F. Supp. 2d 659, 673-674 (E.D. Mich. 2002)(citing to *People v. Bailey*,

218 Mich. App. 645, 647; 554 N.W.2d 391 (1996)).  This Court concludes

that petitioner's sentence of 29 years and 8 months to 75 years in prison

for assault with intent to commit murder and an additional 2 years for the

felony-firearm conviction was not extreme or grossly disproportionate to the

offense or to the offender, so as to entitle him to habeas relief. *See Benton*

*v. Booker,* 403 F. App'x 984, 986 (6th Cir. 2010)(imposition of prison term

of 25–50 years for petitioner's second-degree murder conviction was not

unconstitutionally disproportionate to the offense or the offender,

particularly where sentence was less than the statutory maximum for the

offense).

Petitioner further challenges the trial court's scoring of several

offense variables and prior record variables of the Michigan Sentencing

Guidelines.

---

[2] The sentence for felony-firearm in Michigan is a mandatory two year prison sentence that must be served consecutively to any underlying felony. *See* M.C.L.A. 750.227b.  Hence, the crime of felony-firearm is not covered by the Michigan Sentencing Guidelines. *People v. Johnigan,* 265 Mich. App. 463, 472; 696 N.W.2d 724 (2005).

State courts are the final arbiters of state law. *See Bradshaw v. Richey,* 546 U.S. 74, 76 (2005); *Sanford v. Yukins,* 288 F.3d 855, 860 (6th Cir. 2002).  Therefore, claims which arise out of a state trial court's sentencing decision are not normally cognizable on federal habeas review, unless the habeas petitioner can show that the sentence imposed exceeded the statutory limits or is wholly unauthorized by law. *See Vliet v. Renico,* 193 F. Supp. 2d 1010, 1014 (E.D. Mich. 2002).  Thus, a sentence imposed within the statutory limits is not generally subject to habeas review. *Townsend v. Burke*, 334 U.S. 736, 741 (1948); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999).

Petitioner's claims that the state trial court incorrectly scored or calculated his sentencing guidelines range under the Michigan Sentencing Guidelines are not cognizable claims for federal habeas review, because they are basically a state law claim. *See Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007)(unpublished)*; Howard v. White,* 76 F. App'x 52, 53 (6th Cir. 2003)(unpublished); *McPhail v. Renico,* 412 F. Supp. 2d 647, 656 (E.D. Mich. 2006).  Errors in the application of state sentencing guidelines cannot independently support habeas relief. *See Kissner v. Palmer*, 826 F.3d 898, 904 (6th Cir. 2016).  Petitioner had "no state- created interest in

having the Michigan Sentencing Guidelines applied rigidly in determining his sentence." *See Mitchell v. Vasbinder,* 644 F. Supp. 2d 846, 867 (E.D. Mich. 2009). "[I]n short, petitioner had no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt,* 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004). Any error by the trial court in calculating his guideline score would not merit habeas relief. *Id.* Petitioner's claims that the state trial court improperly departed above the correct sentencing guidelines range would thus not entitle him to habeas relief, because such a departure does not violate any of the petitioner's federal due process rights. *Austin v. Jackson*, 213 F.3d at 301.

Accordingly, petitioner is not entitled to habeas relief on his first claim.

### B.    Claim # 2.   The hearsay and confrontation claims.

Petitioner contends that the trial court abused its discretion when it allowed the introduction of the victim's out-of-court statements as either an excited utterance or a dying declaration. The victim did not testify at petitioner's trial.

The Michigan Court of Appeals found the statements admissible as

follows:

> The trial court did not abuse its discretion in ruling that Shirley's statement to George was admissible as an excited utterance. George testified that defendant told him that Shirley was "down there dying" and that "you better go save her[.]" George ran to the Maxwell Street home, where the shooting occurred, and saw that Shirley was bleeding from her chest and leg. Shirley was gasping for air and was lightheaded. Shirley told George that "he shot me in the chest;" George knew that "he" referred to defendant given George's prior conversation with defendant. Shirley was still under the stress of the event, i.e., she was lying on a mattress and bleeding as a result of multiple gunshot wounds. The statement also was related to the startling event, the shooting. Given the circumstances of the shooting, it is reasonable to conclude that Shirley was so overwhelmed that she lacked the capacity to fabricate. Thus, the trial court did not abuse its discretion admitting Shirley's statement as an excited utterance.

> In addition, the trial court did (sic) abuse its discretion in ruling that Shirley's statement to George was also admissible as a dying declaration. Defendant argues that Shirley's statement was not within the dying declaration exception because Shirley did not die; she was not in life threatening danger, and she failed to testify at trial. But Shirley was "unavailable as a witness" under MRE 804(a)(5) because the prosecution showed due diligence in its attempts to locate her to testify at the trial. Moreover, Shirley need not have actually died for her statement to be admissible as a dying declaration; she must only have believed death was imminent when she made the statement. It is reasonable to conclude that Shirley believed her death was imminent because of the seriousness of her injuries, her difficulty breathing, and because the statement concerned the cause of what Shirley believed to be her impending death.

> For many of the same reasons as above, the trial court did not abuse its discretion in ruling that Shirley's statement to Officer Gray was admissible as an excited utterance under MRE 803(2).

> Officer Gray found Shirley lying on a mattress with a gunshot wound to her chest and two gunshot wounds to her lower leg. Officer Gray testified that Shirley was sighing, crying, and appeared to be in great pain. Shirley told Officer Gray, "I was shot by Henry Brown; please, sir, I don't want to die; Henry shot me." Shirley was patently under the stress of being shot, and her statement related to that event. Therefore, Shirley's statement to Officer Gray was properly admitted as an excited utterance under MRE 803(2). Moreover, Shirley's excited utterance was admissible whether or not she was available as a witness.

*People v. Brown*, 2013 WL 4487506, at *2 (internal citations omitted).

It is "not the province of a federal habeas court to reexamine state-court determinations on state-court questions." *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). A federal court is limited in federal habeas review to deciding whether a state court conviction violates the Constitution, laws, or treaties of the United States. *Id.* Thus, errors in the application of state law, especially rulings regarding the admissibility of evidence, are usually not questioned by a federal habeas court. *Seymour v. Walker,* 224 F.3d 542, 552 (6th Cir. 2000). What is or is not hearsay evidence in a state court trial is governed by state law. *See Johnson v. Renico,* 314 F. Supp. 2d 700, 705 (E.D. Mich. 2004)(internal citations omitted). Petitioner's claim that the trial court improperly admitted the victim's statements to George and Gray under the excited utterance exception to the hearsay rule presents a state evidentiary law issue which is not cognizable on federal habeas review.

*See e.g. Smith v. Jones,* 326 F. App'x 324, 330 (6th Cir. 2009); *see also Weber v. Newland,* 16 F. App'x 692, 693 (9th Cir. 2001); *Williams v. White,* 183 F. Supp. 2d 969, 975-77 (E.D. Mich. 2002). Likewise, the state court's ruling that the victim's statements qualified as a dying declaration cannot be questioned by this Court on federal habeas review. *See Bell v. Arn*, 536 F.2d 123, 125-26 (6th Cir. 1976).

In order for a statement to be admissible as a dying declaration, it must be shown that the statement was made "under a sense of impending death." *Mattox v. U. S.* 146 U.S. 140, 151 (1892). This showing may be made "from what the injured person said; or from the nature and extent of the wounds inflicted being obviously such that he must have felt or known that he could not survive; as well as from his conduct at the time and the communications, if any, made to him by his medical advisers, if assented to or understandingly acquiesced in by him." *Id.* The length of time which elapses between the making of the declaration and the declarant's death is one of the elements to be considered, although, "'it is the impression of almost immediate dissolution, and not the rapid succession of death, in point of fact, that renders the testimony admissible.'"*Id.* (internal quotation omitted). A person's fear or belief that his illness will end in death will not

qualify the statement as a dying declaration. *Shepard v. U.S.,* 290 U.S. 96,

100 (1933). Instead, "[T]here must be 'a settled hopeless expectation' that

death is near at hand, and what is said must have been spoken in the hush

of its impending presence." *Id.* (internal quotation omitted). Nonetheless, a

declarant's "despair of recovery" may be gathered from the circumstances

if the facts support the inference. *Id.*

In the present case, the victim's sense of impending death could be

inferred from the fact that she made statements to George and Gray that

she did not want to die.

Petitioner further claims that the admission of all of Shirley's out-of-

court statements violated his Sixth Amendment right to confrontation.

Out of court statements that are testimonial in nature are barred by

the Sixth Amendment Confrontation Clause unless the witness is

unavailable and the defendant has had a prior opportunity to cross-

examine the witness, regardless of whether such statements are deemed

reliable by the court. *See Crawford v. Washington,* 541 U.S. 36 (2004).

The Supreme Court, however, indicated that dying declarations may be a

historical exception to the rule against the admission of hearsay testimony:

> The one deviation we have found involves dying declarations.
> The existence of that exception as a general rule of criminal

> hearsay law cannot be disputed.... Although many dying declarations may not be testimonial, there is authority for admitting even those that clearly are. We need not decide in this case whether the Sixth Amendment incorporates an exception for testimonial dying declarations. If this exception must be accepted on historical grounds, it is *sui generis.*

*Id.* at 56 n. 6.

The Supreme Court has reiterated its recognition of this long-standing exception to the exclusion of testimonial dying declaration statements in *Giles v. California*,554 U.S. 353, 358 (2008)("We have previously acknowledged that two forms of testimonial statements were admitted at common law even though they were unconfronted. The first of these were declarations made by a speaker who was both on the brink of death and aware that he was dying." (internal citation omitted)). Prior to *Crawford,* the United States Supreme Court had likewise determined that the admission of a dying declaration does not violate a criminal defendant's right to confrontation. *See Pointer v. Texas,* 380 U.S. 400, 407 (1965)(dying declarations are admissible against an accused); *Mattox v. United States*, 146 U.S. at 151-52 (1892)(same). Because "[T]he hearsay exception for dying declarations has been recognized by the Supreme Court since at least 1892[.]" the admission of the victim's dying declarations to Mr. George and Officer Gray did not violate petitioner's rights under the

Confrontation Clause. *See Byrd v. Collins,* 209 F.3d 486, 528 (6th Cir. 2000).

Petitioner's Confrontation Clause claim regarding Shirley's statement to Mr. George also fails because the victim did not make this statement to law enforcement but to an acquaintance. The Confrontation Clause is not implicated, and thus does not need not be considered, when non-testimonial hearsay is at issue. *See Davis v. Washington*, 547 U. S. 813, 823-26 (2006); *see also Desai v. Booker,* 538 F.3d 424, 425-26 (6th Cir. 2008). Testimonial statements do not include remarks made to family members or acquaintances, business records, or statements made in furtherance of a conspiracy. *Crawford,* 541 U.S. at 51-52, 56. In holding that the Sixth Amendment right to confrontation does not apply to non-testimonial statements, the Supreme Court stated:

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused-in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' *Ibid.* An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."

*Davis,* 547 U.S. at 823-24 (quoting *Crawford,* 541 U.S., at 51).

Shirley's statement to Mr. George does not constitute "testimonial" hearsay under *Crawford* because it was made to an acquaintance, not a law enforcement officer. *See Doan v. Carter*, 548 F.3d 449, 458 (6th Cir. 2008)(victim's statements to family and friends regarding abuse she had received at hands of petitioner not testimonial); *United States v. Franklin*, 415 F.3d 537, 545-46 (6th Cir. 2005)(citing cases)(casual statements to family and acquaintances nontestimonial under *Crawford*).

Likewise, Shirley's statements to Officer Gray were non-testimonial, because they were made while he was assisting her during an ongoing emergency.

In *Davis v. Washington,* the Supreme Court ruled that statements taken by police officers during the course of police questioning are considered "nontestimonial," and not subject to the Confrontation Clause, when they are made "under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.,* 547 U.S. at 822. By contrast, statements are considered testimonial "when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later

criminal prosecution." *Id.* In *Davis,* the Supreme Court held that statements

made by a domestic abuse victim in response to a 911 operator's

questions while the defendant was inside her home in violation of a no-

contact order, in which the victim identified her assailant, were not

"testimonial" and, therefore, were not subject to the Confrontation Clause,

because the victim was speaking about events as they were actually

happening, rather than describing past events, and the primary purpose of

the 911 operator's interrogation was to enable police assistance to meet an

ongoing emergency caused by a physical threat to the victim. *Id.* at pp.

826-28. In so ruling, the Supreme Court noted "[A] 911 call....and at least

the initial interrogation conducted in connection with a 911 call, is ordinarily

not designed primarily to "establis[h] or prov[e]" some past fact, but to

describe current circumstances requiring police assistance." *Id.* at p. 827.

The U.S. Supreme Court in *Michigan v. Bryant* noted that:

> The existence of an ongoing emergency must be objectively
> assessed from the perspective of the parties to the interrogation
> at the time, not with the benefit of hindsight. If the information the
> parties knew at the time of the encounter would lead a reasonable
> person to believe that there was an emergency, even if that belief
> was later proved incorrect, that is sufficient for purposes of the
> Confrontation Clause. The emergency is relevant to the "primary
> purpose of the interrogation" because of the effect it has on the
> parties' purpose, not because of its actual existence.

*Michigan v. Bryant,* 562 U.S. 344, 361, n. 8 (2011).

The Supreme Court in *Bryant* observed that they had not defined what constituted an "ongoing emergency" in *Davis. Bryant,* 562 U.S. at 363. The Supreme Court cautioned that "whether an emergency exists and is ongoing is a highly context-dependent inquiry." *Id.* The Supreme Court further noted that for purposes of the Sixth Amendment: "An assessment of whether an emergency that threatens the police and public is ongoing cannot narrowly focus on whether the threat solely to the first victim has been neutralized because the threat to the first responders and public may continue." *Id.*

The Supreme Court in *Bryant* further concluded that:

> As *Davis* made clear, whether an ongoing emergency exists is simply one factor—albeit an important factor—that informs the ultimate inquiry regarding the "primary purpose" of an interrogation. Another factor the Michigan Supreme Court did not sufficiently account for is the importance of *informality* in an encounter between a victim and police. Formality is not the sole touchstone of our primary purpose inquiry because, although formality suggests the absence of an emergency and therefore an increased likelihood that the purpose of the interrogation is to "establish or prove past events potentially relevant to later criminal prosecution," informality does not necessarily indicate the presence of an emergency or the lack of testimonial intent.

*Michigan v. Bryant*, 562 U.S. at 366 (emphasis original)(internal citation omitted).

Finally, the Supreme Court admonished that:

> The existence of an emergency or the parties' perception that an emergency is ongoing is among the most important circumstances that courts must take into account in determining whether an interrogation is testimonial because statements made to assist police in addressing an ongoing emergency presumably lack the testimonial purpose that would subject them to the requirement of confrontation.

*Michigan v. Bryant*, 562 U.S. at 370.

The victim's statement to Officer Gray was clearly non-testimonial because she was reporting an ongoing emergency in which she was in fear of death.

The Michigan Court of Appeals reasonably rejected this portion of petitioner's claim, as follows:

> Shirley's statement to Officer Gray was not testimonial because the primary purpose of the interrogation was to respond to an ongoing emergency. As in *Bryant*, the police responded to a radio dispatch that a shooting occurred at the Maxwell Street home. The officers entered the home and saw Shirley lying on a mattress suffering from gunshot wounds to her chest and leg. Shirley was sighing, crying, and in great pain. Shirley told the first officers to enter the home, "I was shot by Henry Brown; please, sir, I don't want to die; Henry shot me." The objective circumstances show that the police and Shirley were addressing an ongoing emergency when she made her statement to Gray. The threat from the shooter had not ended because neither the reason for shooting nor the shooter's location was known. Thus, the objective circumstances indicate that the primary purpose of the interrogation was to enable the police to meet an ongoing emergency. Shirley's statement to Officer Gray was not

testimonial and did not implicate defendant's right of confrontation.

*People v. Brown*, 2013 WL 4487506, at *4 (internal citations omitted).

Petitioner also challenges the statement made at the hospital to Officer Washington, claiming that it violated his right to confrontation. Unlike the statements made to George and Officer Gray, the Michigan Court of Appeals agreed that the statement made at the hospital to Officer Washington violated petitioner's right to confrontation, but found that any error was harmless in light of the overwhelming evidence presented against petitioner, as follows:

> Nonetheless, defendant failed to show that the plain error affected his substantial rights, i.e., that the error affected the outcome of the lower court proceedings. Defendant merely argues that the error was not harmless because it negatively affected his right to confront his accuser. The evidence of defendant's guilt, however, was overwhelming. George testified that as he was exiting his vehicle, he saw defendant entering a yellow cab. Defendant stopped and told George, "[Y]ou better—she down there dying; you better go save her; you probably could save that b——; she probably dead, so." George asked defendant who he was talking about and defendant replied, "Ree–Ree," which was a nickname for Shirley. George found Shirley lying on a mattress bleeding from her chest and leg. Shirley told George, "[H]e shot me in the chest." Given defendant's statement to George, it was clear to George that Shirley was referring to defendant.

> Officer Gray and Officer Johnson responded to the scene and saw that Shirley sustained gunshot wounds to her chest and leg. Shirley told Officer Gray, "I was shot by Henry Brown; please, sir,

I don't want to die; Henry shot me." After the officers returned to the scene of the shooting, the officers noticed a yellow cab that was headed towards to the scene. Based on the information from George, the officers conducted an investigatory stop of the cab. When the officers ordered defendant and the driver out of the vehicle, defendant yelled, "F—— that b——; she going to get out by eight o'clock; what the Judge going to do, give her some blow? That b—— ain't testifying. This s—— is a joke." The officers recovered a hotel key from defendant. Weldon, the driver, testified that he picked up a fare at the Travel Lodge.

Pursuant to a search warrant executed at the Travel Lodge, the officers recovered a registration form that listed defendant's home as his grandmother's address. A subsequent search warrant was executed at defendant's grandmother's home where defendant's grandmother and another woman were present. The two women indicated that defendant stayed upstairs; the officers searched the upstairs bedroom and found men's clothing and a .45 caliber semiautomatic handgun in a dresser drawer. The gun recovered in the dresser drawer matched the four .45 caliber cartridge cases and two bullets found at the scene of the shooting. Thus, given the substantial evidence of defendant's guilt, defendant has failed to show that the admission of Shirley's statement to Officer Washington contrary to defendant's right of confrontation affected the outcome of the trial.

*People v. Brown*, 2013 WL 4487506, at *5 (internal citations omitted).

Confrontation Clause violations are subject to harmless error review.

*See Bulls v. Jones,* 274 F.3d 329, 334 (6th Cir. 2001). In *Brecht v.*

*Abrahamson*, 507 U.S. 619, 637 (1993), the U.S. Supreme Court held that

for purposes of determining whether federal habeas relief should be

granted to a state prisoner on the ground of federal constitutional error, the

appropriate harmless error standard to apply is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.

In determining whether a Confrontation Clause violation is harmless under *Brecht*, a court should consider the following factors: "(1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case." *See Jensen v. Romanowski,* 590 F.3d 373, 379 (6th Cir. 2009)(citing *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986)).

Given the substantial evidence of petitioner's guilt, the Michigan Court of Appeals reasonably found that the admission of the victim's statement to Officer Washington was harmless error which did not affect the outcome of petitioner's trial. *People v. Brown*, 2013 WL 4487506, *5. *See Davis v. Ayala,* 135 S. Ct. 2187, 2198-99 (2015). Petitioner is not entitled to habeas relief on his second claim.

**C.     Claim # 3.  The sufficiency of evidence claim.**

Petitioner alleges that the great weight of the evidence introduced at trial was insufficient to establish beyond a reasonable doubt that petitioner was guilty of the crimes for which he was charged and convicted. Petitioner contends that he did not shoot Shirley Smith in the leg or chest and that the injuries were staged by Smith, with the help of Tonya Smith and Tony George (a/k/a Eric George), before the police arrived. *See* ECF 16, PageID.192.

A federal habeas court cannot grant habeas relief because a state conviction is against the great weight of the evidence. *Cukaj v. Warren,* 305 F. Supp. 2d 789, 796 (E.D. Mich. 2004); *Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002); *see also Nash v. Eberlin*, 258 F. App'x 761, 764, n. 4 (6th Cir. 2007)("a manifest-weight-of-the-evidence argument is a state-law argument")*; Artis v. Collins,* 14 F. App'x 387 (6th Cir. 2001) (declining to grant certificate of appealability to habeas petitioner on claim that jury's verdict was against the manifest weight of the evidence).  The test for habeas relief is not whether the verdict was against the great weight of the evidence, but whether there was any evidence to support it. *Dell,* 194 F. Supp. 2d at 648.  As long as there is sufficient evidence to

convict petitioner, the fact that the verdict went against the great weight of the evidence does not entitle him to habeas relief. *Id.* Petitioner is not entitled to relief on any claim that the verdict went against the great weight of the evidence.

Petitioner alleges that there was insufficient evidence to sustain his convictions for felon in possession of a firearm, felony firearm, and assault with intent to commit murder.

The Supreme Court held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). But the crucial question in reviewing the sufficiency of the evidence to support a criminal conviction is, "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979). A court need not "ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt." Instead, the relevant question is whether, after the evidence is viewed in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. *Id.* at 318-19 (internal

citation and footnote omitted)(emphasis in the original).

When considering a challenge to the sufficiency of the evidence to

convict, the reviewing court must give circumstantial evidence the same

weight as direct evidence. *See United States v. Farley*, 2 F.3d 645, 650

(6th Cir. 1993). "Circumstantial evidence alone is sufficient to sustain a

conviction and such evidence need not remove every reasonable

hypothesis except that of guilt." *United States v. Kelley*, 461 F.3d 817, 825

(6th Cir. 2006)(internal quotation omitted); *see also Saxton v. Sheets*, 547

F.3d 597, 606 (6th Cir. 2008)("A conviction may be sustained based on

nothing more than circumstantial evidence.").  Moreover, "[c]ircumstantial

evidence is not only sufficient, but may also be more certain, satisfying and

persuasive than direct evidence." *Desert Palace, Inc. v. Costa*, 539 U.S.

90, 100 (2003)(quoting *Rogers v. Missouri Pacific R. Co.*, 352 U.S. 500,

508 n.17 (1957)); *see also Holland v. United States*, 348 U.S. 121, 140

(1954)(circumstantial evidence is "intrinsically no different from testimonial

evidence," and "[i]f the jury is convinced beyond a reasonable doubt, we

can require no more"); *Harrington,* 562 U.S. at 113 ("sufficient conventional

circumstantial evidence" supported the verdict).

A federal habeas court cannot overturn a state court decision that rejects a sufficiency of the evidence claim simply because the federal court disagrees with the state court's resolution of that claim.  Instead, a federal court may grant habeas relief only if the state court decision was an objectively unreasonable application of the *Jackson* standard. *See Cavazos v. Smith,* 565 U.S. 1, 2 (2011).  "Because rational people can sometimes disagree, the inevitable consequence of this settled law is that judges will sometimes encounter convictions that they believe to be mistaken, but that they must nonetheless uphold." *Id.*  Indeed, for a federal habeas court reviewing a state court conviction, "the only question under *Jackson* is whether that finding was so insupportable as to fall below the threshold of bare rationality." *Coleman v. Johnson*, 566 U.S. 650, 656 (2012).  A state court's determination that the evidence does not fall below that threshold is entitled to "considerable deference under [the] AEDPA." *Id.*

Petitioner contends that there was insufficient evidence to prove his identity as the shooter and that there was insufficient evidence of an actual intent to kill, so as to support his conviction for assault with intent to commit murder.  The Michigan Court of Appeals rejected this claim:

A rational trier of fact could conclude that the prosecution proved the elements of assault with intent to commit murder beyond a reasonable doubt. Ample circumstantial evidence existed to infer that defendant was the person who shot Shirley. Defendant told George, "[Y]ou better—she down there dying; you better go save her; you probably could save that b——; she probably dead, so." George asked defendant whom he was talking about, and defendant replied, "Ree–Ree," which was a nickname for Shirley. Shirley told George and Officer Gray that defendant shot her. Moreover, upon defendant's arrest, defendant yelled, "F—— that b——; she going to get out by eight o'clock; what the Judge going to do, give her some blow? That b—— ain't testifying. This s—— is a joke." Then, pursuant to a valid search warrant, the police recovered a handgun in defendant's grandmother's home in a room with men's clothing that matched the gun that fired the shell casings and fired bullets found at the scene of the shooting.

*People v. Brown*, 2013 WL 4487506, at *6.

Under Michigan law, "[T]he identity of a defendant as the perpetrator of the crimes charged is an element of the offense and must be proven beyond a reasonable doubt." *Byrd v. Tessmer*, 82 F. App'x 147, 150 (6th Cir. 2003)(citing *People v. Turrell*, 25 Mich. App. 646, 181 N.W.2d 655, 656 (1970)).  Identity of a defendant can be inferred through circumstantial evidence. *See Dell v. Straub,* 194 F. Supp. 2d 629, 648 (E.D. Mich. 2002). Therefore, eyewitness identification is not necessary to sustain a conviction. *See United States v. Brown,* 408 F.3d 1049, 1051 (8th Cir. 2005); *Dell v. Straub,* 194 F. Supp. 2d at 648.  In the present case, the Michigan Court of Appeals reasonably concluded that there was ample

circumstantial evidence to prove that petitioner was the shooter.  Moreover, petitioner basically admitted to Mr. George that he shot the victim.  "[A]n admission by the accused identifying himself as the person involved in the (crime) is sufficient to sustain a guilty verdict when the crime itself is shown by independent evidence." *United States v. Opdahl*, 610 F.2d 490, 494 (8th Cir. 1979); *see also Sok v. Romanowski,* 619 F. Supp. 2d 334, 351 (W.D. Mich. 2008)(evidence sufficient to establish petitioner's identity as armed robber where his admissions placed him at the location of the crime).  Petitioner's admission of guilt was sufficient evidence to establish his guilt as the shooter.

The Michigan Court of Appeals found that petitioner notified George that he had just shot Shirley and told George he better go to the house because Shirley could possibly be dead.  George immediately went to the house and witnessed Shirley laying on a mattress, bleeding from gunshot wounds.  Shirley told George and Officer Gray that petitioner shot her and that she did not want to die.  When arrested, petitioner shouted obscenities in connection with the victim and stated that the victim was not going to testify.  Finally, pursuant to a valid search warrant, the police recovered a handgun in petitioner's grandmother's home, in a room which contained

men's clothing, that matched the gun that fired the shell casings and bullets found at the scene of the shooting. This evidence established that petitioner was the shooter.

The evidence also establish that petitioner committed the crime of assault with intent to commit murder.

Under Michigan law, the elements of assault with intent to commit murder in Michigan are: (1) an assault; (2) with an actual intent to kill; (3) which if successful, would make the killing murder. *See Warren v. Smith,* 161 F.3d 358, 361 (6th Cir. 1998); *see also Steele v. Withrow,* 157 F. Supp. 2d 734, 740 (E.D. Mich. 2001). The intent to kill element does not equate with murder. *Warren,* 161 F.3d at 361 (citing *People v. Taylor*, 422 Mich. 554; 375 N.W.2d 1, 7 (1985)). Thus, an intent to kill for purposes of this offense may not be proven by an intent to inflict great bodily harm or a wanton and wilful disregard of the likelihood that the natural tendency of the acts will likely cause death or great bodily harm. *Id.* A conviction for assault with intent to commit murder must be premised upon a defendant's specific intent to kill. *Steele,* 157 F. Supp. 2d at 740 (citing *People v. Edwards*, 171 Mich. App. 613, 620; 431 N.W.2d 83 (1988)). The intent to kill, for purposes of the crime of assault with intent to commit murder, need

not be proved by direct, positive, or independent evidence, and the trier of fact may draw reasonable inferences from the facts and evidence in determining the existence of an intent to kill. *See Taylor*, 422 Mich. at 567-68.  In determining the defendant's intent, a court may take into account "[t]he nature of the defendant's acts constituting the assault; the temper or disposition of mind with which they were apparently performed, whether the instrument and means used were naturally adapted to produce death, his conduct and declarations prior to, at the time, and after the assault, and all other circumstances calculated to throw light upon the intention with which the assault was made." *Id.* at 568 (quoting *Roberts v. People*, 19 Mich. 401, 415-16 (1870)).  The use of a lethal weapon will support an inference of an intent to kill. *Steele,* 157 F. Supp. 2d at 740; *People v. Ray*, 56 Mich. App. 610, 615; 224 N.W.2d 735 (1974).

The fact that petitioner intentionally pointed his loaded firearm at Shirley at close range, aimed in her direction, and fired several shots was sufficient evidence from which a reasonable factfinder could find beyond a reasonable doubt that petitioner actually intended to kill the victim. *See Johnigan v. Elo,* 207 F. Supp. 2d 599, 608 (E.D. Mich. 2002).  Moreover, the fact that petitioner fired multiple gunshots at Shirley also supports a

finding that petitioner intended to kill the victim. *See Steele v. Withrow,* 157 F. Supp. 2d at 740.

In his Standard 4 Brief, brought on petitioner's direct appeal, petitioner alleged that the victim, Shirley Smith did not sustain a gunshot wound to the chest and the injuries were fabricated by Tony George and Tonya Smith. Petitioner contends that the victim was treated at the hospital only for a fractured leg. *See* ECF 18-23, PageID.1268. Petitioner filed an affidavit with his habeas petition, which contains the same allegations. ECF 16, PageID.192.

This portion of petitioner's sufficiency of evidence claim is an attack on the credibility of the witnesses. Attacks on witness credibility are simply challenges to the quality of the prosecution's evidence, and not to the sufficiency of the evidence. *Martin v. Mitchell,* 280 F.3d 594, 618 (6th Cir. 2002). An assessment of the credibility of witnesses is therefore generally beyond the scope of federal habeas review of sufficiency of evidence claims. *Gall v. Parker*, 231 F.3d 265, 286 (6th Cir. 2000). The mere existence of sufficient evidence to convict therefore defeats a petitioner's claim. *Id.* To the extent that petitioner's insufficiency of evidence claim rests on an allegation of the witnesses' credibility, which is the province of

the finder of fact, petitioner is not entitled to habeas relief on this claim. *See*

*Tyler v. Mitchell,* 416 F.3d 500, 505 (6th Cir. 2005).

In any event, this Court notes that the Emergency Department

Treatment Note, which was compiled at the hospital following the shooting,

indicates that the victim, Shirley Smith, sustained gunshot wounds to her

chest, right leg, and left leg.

In his motion for relief from judgment, petitioner submitted that he had

newly discovered evidence in the form of an autopsy report to support his

position that Shirley Smith was not shot and that the entire scenario was

staged by Tony George and Tonya Smith. The trial court rejected

petitioner's claim by finding:

> Additionally, this Court notes that much of the discussion in
> defendant's brief surrounds an autopsy report dated September
> 12, 2011, based on an incident occurring subsequent to the
> incident in the present case. The autopsy report is for Sheressa
> Smith and indicates that she died of a gunshot wound to the head.
> Defendant asserts that Sheressa Smith was actually the victim in
> the present case where she used the alias Shirley Smith.
> Defendant asserts that the autopsy report does not indicate that
> Sheressa Smith had ever been shot in the chest as was indicated
> by evidence presented in the assault with intent to murder case
> against defendant.
>
> To the extent that defendant's argument in this case could be
> construed as a claim of newly discovered evidence and thus,
> properly before this Court in a subsequent motion for relief from
> judgment, defendant has not shown that he is entitled to relief

pursuant to MCR 6.508(D)(3). Defendant argues that the autopsy report demonstrates that the victim he was convicted of shooting was not shot in the chest as alleged at trial. Even assuming that, as defendant claims, Shirley Smith was in fact Sheressa Smith and that the autopsy report provides no indication of a gunshot wound to the victim's chest, defendant has not demonstrated that the presentation of the autopsy report would provide him with a reasonable likelihood of acquittal. MCR 6.508(D)(3)(b).

The Court of Appeals, in affirming defendant's conviction, found that sufficient evidence was presented at trial that defendant committed an assault with intent to murder against Shirley Smith. *People v Brown*, *supra* slip op at 5-6. As the Court of Appeals noted, the elements of the crime of assault with intent to commit murder are: "an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v Henderson*, 306 Mich App I, 9; 854 NW2d 234 (2014). In this case, although defendant disputes that the victim was shot in the chest, he does not dispute that evidence at trial indicated that the victim was also shot in the leg. The gunshot to the leg itself is enough to establish the crime of assault with intent to commit murder. *See People v Henderson*, supra at 12. Thus, defendant cannot establish that the alleged "new evidence" would change the result reached at defendant's trial.

*People v. Brown*, No. 10-008214-01-FC (Wayne County Circuit Court, Dec. 14, 2016), ** 3-4 (Internal footnote omitted).

In the present case, there was sufficient evidence for a rational trier of fact to find that petitioner shot Shirley Smith with the intent to commit murder. The Michigan Court of Appeals reasonably found that the evidence presented at trial was sufficient to sustain petitioner's convictions for

assault with intent to commit murder.  Petitioner is not entitled to relief on his third claim.

### D.    Claims # 4 and # 5.  The ineffective assistance of counsel claims.

Petitioner alleges that trial counsel was inefficient for reasons contained in his Standard 4 Brief on appeal and additional reasons contained in his habeas petition.  He also claims that appellate counsel was ineffective by failing to raise these issues in his brief on his direct appeal.  The Court will consolidate petitioner's ineffective assistance of counsel claims for judicial clarity.

To show that he was denied the effective assistance of counsel under federal constitutional standards, a defendant must satisfy a two prong test. First, the defendant must demonstrate that, considering all of the circumstances, counsel's performance was so deficient that the attorney was not functioning as the "counsel" guaranteed by the Sixth Amendment. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  In so doing, the defendant must overcome a strong presumption that counsel's behavior lies within the wide range of reasonable professional assistance. *Id.*  In other words, petitioner must overcome the presumption that, under the circumstances, the challenged action might be sound trial strategy.

*Strickland,* 466 U.S. at 689.  Second, the defendant must show that such

performance prejudiced his defense.  *Id.*  To demonstrate prejudice, the

defendant must show that "there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have

been different." *Strickland,* 466 U.S. at 694.  The Supreme Court's holding

in *Strickland* places the burden on the defendant who raises a claim of

ineffective assistance of counsel, and not the state, to show a reasonable

probability that the result of the proceeding would have been different, but

for counsel's allegedly deficient performance.  *See Wong v. Belmontes*, 558

U.S. 15, 27 (2009).  The *Strickland* standard applies as well to claims of

ineffective assistance of appellate counsel.  *See Whiting v. Burt,* 395 F.3d

602, 617 (6th Cir. 2005).

Respondent alleges that petitioner's ineffective assistance of trial

counsel claim is procedurally defaulted.[3]  Because petitioner's ineffective

---

[3] Respondent urges this Court to deny these claim on the grounds that they are procedurally defaulted because petitioner failed to object at trial.  Procedural default is not a jurisdictional bar to review of a habeas petition on the merits. *See Trest v. Cain*, 522 U.S. 87, 89 (1997).  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits." *Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003)(citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  "Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law." *Lambrix*, 520 U.S. at 525.  The Court believes it would be easier to address the merits of the claims.

assistance of appellate counsel claim is related, the Court will address both claims on the merits.

Petitioner alleges that trial counsel was ineffective by stipulating to enter into evidence the hospital room emergency medical reports, without calling emergency room personnel. Petitioner also contends that counsel should have investigated and called the paramedics, Officer Washington, and his aunt and brother to testify on his behalf. Petitioner further contends that trial counsel should have presented the taxi cab driver's alibi to prove he was not with petitioner. *See* Habeas Petition ECF 16, PageID.162, 165.

The Michigan Court of Appeals denied petitioner's claim that trial counsel was ineffective by failing to investigate and call the additional witnesses finding that "there is nothing apparent on the record that indicates the name of defendant's purported witnesses and the detail of their potential testimony." *People v. Brown*, 2013 WL 4487506, at *7.

Although petitioner mentioned the names of several witnesses that he contends should have been called on his behalf, petitioner failed to attach any affidavits from these witnesses to his motion or to his supplemental brief, nor has he provided this Court with any affidavits from these witnesses concerning their proposed testimony and willingness to

testify on petitioner's behalf. Conclusory allegations of ineffective assistance of counsel, without any evidentiary support, do not provide a basis for habeas relief. *See Workman v. Bell,* 178 F.3d 759, 771 (6th Cir. 1998). By failing to present any evidence to the state courts in support of his ineffective assistance of claim, petitioner is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim with this Court. *See Cooey v. Coyle*, 289 F.3d 882, 893 (6th Cir. 2002)(citing 28 U.S.C. § 2254(e)(2)(A)(ii)).

Petitioner has failed to attach any offer of proof or any affidavits sworn by the proposed witnesses. Petitioner has offered, neither to the Michigan courts nor to this Court, any evidence beyond his own assertions as to whether the witnesses would have been able to testify and what the content of these witnesses' testimony would have been. In the absence of such proof, petitioner is unable to establish that he was prejudiced by counsel's failure to call these witnesses to testify at trial, so as to support the second prong of an ineffective assistance of counsel claim. *See Clark v. Waller,* 490 F.3d 551, 557 (6th Cir. 2007). Furthermore, petitioner alleges that he paid Joseph Bruce to investigate his case, yet he fails to

provide an affidavit in support of his assertions. There is also nothing in the record to support this part of his fourth claim.

Moreover, petitioner has failed to show that presenting an alibi on behalf of the taxi driver would have lead to his acquittal, in light of the fact that the petitioner was in the area at the time of the crime. Such an alibi defense would not have lead to his acquittal on the assault with intent to commit murder. A defense counsel has no obligation to present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d 520, 527 (6th Cir. 2004)(internal quotation omitted). Thus, the failure to present a proposed alibi that the taxi driver was not with petitioner which would not lead to petitioner's acquittal does not amount to the ineffective assistance of counsel. *Id.*

In his reply brief, petitioner contends that trial counsel was ineffective by failing to object to the admission of the medical reports, without any medical personnel testifying at his trial. ECF 19, PageID.1809. Numerous times, petitioner contends that trial counsel was ineffective by failing to call the medical personnel to establish that the victim did not suffer from a gunshot wound to the chest. Petitioner fails to produce any records or affidavits to substantiate his claim. A defense counsel has no obligation to

present evidence or testimony that would not have exculpated the defendant. *See Millender v. Adams,* 376 F.3d at 527.

Petitioner lastly contends that appellate counsel was ineffective for failing to raise his claims on his appeal of right.

Petitioner raised his additional claims in his Standard 4 *pro per* supplemental brief.[4]

The Sixth Amendment guarantees a defendant the right to the effective assistance of counsel on the first appeal by right. *Evitts v. Lucey*, 469 U.S. 387, 396-397 (1985). However, court appointed counsel does not have a constitutional duty to raise every nonfrivolous issue requested by a defendant. *Jones v. Barnes*, 463 U.S. 745, 751 (1983).

The Michigan Court of Appeals considered, and rejected the claims raised by petitioner in his supplemental *pro se* brief; petitioner is unable to show that he was prejudiced by appellate counsel's failure to raise these claims in the appeal brief filed by counsel. *See Donaldson v. Booker,* 505 F. App'x 488, 496 (6th Cir. 2012); *Bentley v. Bock,* 239 F. Supp. 2d 686, 696-97 (E.D. Mich. 2002).

---

[4] Standard 4 of Administrative Order 2004-6, 471 Mich. cii (2004), "explicitly provides that a *pro se* brief may be filed within 84 days of the filing of the brief by the appellant's counsel, and may be filed with accompanying motions." *Ware v. Harry,* 636 F. Supp. 2d 574, 594, n. 6 (E.D. Mich. 2008).

Moreover, none of the claims raised by petitioner have any merit. "[A]ppellate counsel cannot be found to be ineffective for 'failure to raise an issue that lacks merit.'" *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010)(quoting *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Because none of these claims have merit, appellate counsel was also not ineffective by failing to assist petitioner in the filing of a motion for an evidentiary hearing to expand the record. Petitioner is not entitled to relief on his fourth claim.

### E.    Claim # 5.  The prosecutorial misconduct claim.

Petitioner alleges that the prosecutor knowingly presented perjured testimony and suppressed material evidence.

Respondent contends that petitioner's prosecutorial misconduct claim is procedurally defaulted. The Court agrees but will address the claim on the merits.

To prevail on a claim that a conviction was obtained by evidence that the government knew or should have known to be false, a defendant must show that the statements were actually false, that the statements were material, and that the prosecutor knew they were false. *Coe v. Bell*, 161 F.3d 320, 343 (6th Cir. 1998). However, a habeas petitioner must show

that a witness' statement was "indisputably false," rather than misleading, to establish a claim of prosecutorial misconduct or a denial of due process based on the knowing use of false or perjured testimony. *Byrd v. Collins*, 209 F.3d 486, 517-18 (6th Cir. 2000).

Mere inconsistencies in a witness' testimony do not establish the knowing use of false testimony by the prosecutor. *Coe*, 161 F.3d at 343. Additionally, the fact that a witness contradicts himself or changes his story also does not establish perjury either. *Malcum v. Burt,* 276 F. Supp. 2d 664, 684 (E.D. Mich. 2003)(citing *Monroe v. Smith*, 197 F. Supp. 2d 753, 762 (E.D. Mich. 2001)). A habeas petition should be granted if perjury by a government witness undermines the confidence in the outcome of the trial. *Id.*

To prevail on his claim that the prosecutor withheld evidence, petitioner must show (1) that the state withheld exculpatory evidence and (2) that the evidence was material either to guilt or to punishment irrespective of good faith or bad faith of the prosecution. *Brady v. Maryland,* 373 U.S. 83, 87 (1963). Evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different. A "reasonable probability is a

probability sufficient to undermine confidence in the outcome." *United States v. Bagley,* 473 U.S. 667, 683 (1985).  In *Strickler v. Greene,* 527 U.S. 263, 281-82 (1999), the Supreme Court articulated three components or essential elements of a *Brady* claim: (1) the evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) prejudice must have ensued. "Prejudice (or materiality) in the *Brady* context is a difficult test to meet." *Jamison v. Collins*, 291 F.3d 380, 388 (6th Cir. 2002).  A habeas petitioner bears the burden of showing the prosecution suppressed exculpatory evidence. *See Bell v. Howes*, 703 F.3d 848, 853 (6th Cir. 2012).

Petitioner contends that the prosecutor withheld a DNA report on an unrelated case to bolster the credibility of one of the witnesses presented at petitioner's trial.  Petitioner further alleges that Tony George filed a false police report in an unrelated incident and that the DNA results in that case exonerated petitioner of that crime.  The trial court judge found that petitioner failed to support his claim that the police report was false or demonstrate how presenting the DNA results from an unrelated criminal

charge would have resulted in an acquittal in the case now before the court. *People v. Brown*, No. 10-008214-01-FC, at 2-3.

Petitioner also contends that the prosecutor suppressed medical records which would have substantiated that the victim faked the gunshot would to her chest.  Petitioner alleges that an autopsy report dated September 12, 2011, pertaining to the death of a woman four (4) months after petitioner's trial, would indicate that the victim did not have a gunshot wound to her chest.

The autopsy report is not part of the record and did not come into existence until four (4) months after petitioner's trial.  Petitioner's alleges that the woman connected to the autopsy report and the Shirley Ann Smith are the same person.

There is no evidence of record to support any of petitioner's contentions.  Conclusory allegations of perjury in a habeas corpus petition must be corroborated by some factual evidence. *Barnett v. United States*, 439 F.2d 801, 802 (6th Cir.1971).  Petitioner's contention that the prosecutor knowingly supported perjured testimony is unsubstantiated. Likewise, allegations that are merely conclusory or which are purely speculative cannot support a *Brady* claim. *See Burns v. Lafler,* 328 F.

Supp. 2d 711, 724 (E.D. Mich. 2004).  Petitioner failed to show that any of the alleged evidence withheld by the prosecutor would have exonerated him of this crime.

Furthermore, this Court has already found, *supra,* that trial court reasonably found that there was sufficient evidence to sustain petitioner's convictions, independent of the autopsy report. *People v. Brown*, No. 10-008214-01-FC, at 4.  Petitioner is not entitled to relief on his fifth claim.

## IV.  Conclusion

The Court will deny the petition for a writ of habeas corpus.  The Court will also deny a certificate of appealability to petitioner.  In order to obtain a certificate of appealability, a prisoner must make a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2).  To demonstrate this denial, the applicant is required to show that reasonable jurists could debate whether, or agree that, the petition should have been resolved in a different manner, or that the issues presented were adequate to deserve encouragement to proceed further. *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000).  When a district court rejects a habeas petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the

constitutional claims to be debatable or wrong. *Id.* at 484. "The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rules Governing § 2254 Cases, Rule 11(a), 28 U.S.C. foll. § 2254.

For the reasons stated in this opinion, the Court will deny petitioner a certificate of appealability because he has failed to make a substantial showing of the denial of a federal constitutional right. *Myers v. Straub,* 159 F. Supp. 2d 621, 629 (E.D. Mich. 2001). The Court denies petitioner leave to appeal *in forma pauperis,* because the appeal would be frivolous. *Id.*

## V. ORDER

IT IS ORDERED that the Petition for a Writ of Habeas Corpus is **DENIED WITH PREJUDICE.**

IT IS FURTHER ORDERED That a Certificate of Appealability is **DENIED.** Petitioner will be **DENIED** leave to appeal *in forma pauperis.*

Dated: June 20, 2019

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on June 20, 2019, by electronic and/or ordinary mail and also on Henry Brown #281484, Carson City Correctional Facility, 10522 Boyer Road, Carson City, MI 48811.

s/Barbara Radke
Deputy Clerk